IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF GRACIE L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF GRACIE L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

BENJAMIN L., APPELLANT, AND BRITTANY H., APPELLEE.

Filed February 16, 2021.    No. A-20-544.

Appeal from the County Court for Box Butte County: PAUL G. WESS, Judge. Affirmed.

Andrew M. Pope, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for appellant.

Terry Curtiss, Box Butte County Attorney, for appellee State of Nebraska.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Benjamin L. appeals from a disposition order entered by the Box Butte County Court, acting as a juvenile court, regarding his minor daughter, Gracie L., who had previously been adjudicated a child under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Based on the reasons that follow, we affirm.

## BACKGROUND

Benjamin and Brittany H. are the biological parents of Gracie. Prior to the events arising in this case, the parents had joint custody of Gracie, with custody rotating on a weekly basis.

The State filed a petition on September 20, 2019, alleging that Gracie, born in 2011, was a child within the meaning § 43-247(3)(a). The affidavit in support of the petition stated that on

- 1 -

September 19, Brittany reported to law enforcement that Gracie had been abused by Benjamin when she was in his custody. Gracie had multiple bruises all over her buttocks in various sizes and colors. Gracie reported that her stepmother, Kasie L., had kicked her in the buttocks and spanked her with a boot. She also reported that a couple days earlier, Benjamin had spanked her with a wooden spoon. She also mentioned other instances of being spanked with a wooden spoon and a plastic spoon. Gracie was placed in the temporary custody of the Nebraska Department of Health and Human Services (Department) on September 20. The temporary custody order was vacated on September 24 and Brittany was subsequently granted temporary sole legal and physical custody of Gracie and Benjamin's parenting time was suspended. The Department was dismissed from the case on January 16, 2020.

An amended petition was filed on January 20, 2020, and a second amended petition was filed February 5, 2020. The second amended petition stated that Gracie had multiple and varied bruising and the incidents which led to the bruising occurred while she was in Benjamin's custody and that Gracie alleged the perpetrators of the bruising were Benjamin and Kasie. A guardian ad litem (GAL) was appointed for Gracie on May 15.

An adjudication hearing was held on May 29, 2020, and following the hearing, the court entered an order finding Gracie was within the meaning of § 43-247(3)(a), and ordered that she was to remain in Brittany's custody. Benjamin did not appeal the adjudication.

A disposition hearing was held on July 2, 2020. The State offered the GAL's report as well as elicited the testimony of Lori Rodriquez-Fletcher, Gracie's therapist. The GAL's report noted that Benjamin and Kasie both have pending criminal cases in district court. They were both charged with two counts of child abuse arising from the same incidents that led to the adjudication. At the time of the GAL's report, Gracie had not yet been deposed in the criminal cases.

The GAL stated that Benjamin needed to develop a healthy relationship with Gracie, needed to demonstrate the ability to safely and consistently parent Gracie in an environment where she feels safe and secure, needed to accept responsibility and acknowledge that his actions have harmed Gracie, and needed to learn appropriate parenting skills and consequences. The GAL further stated that Benjamin should follow therapeutic recommendations to repair the ruptured relationship with Gracie; that any contact with Gracie should be at the recommendation of Gracie's therapist; and Benjamin should follow any other recommendations of Gracie's therapist, which may include an evaluation. The GAL's report also listed her recommendations to the court in regard to what the parties should be required to do.

Rodriquez-Fletcher testified that she has been working with Gracie since June 2017. She testified that Gracie had not had contact or visitation with Benjamin since this case was filed. She stated that it was in Gracie's best interests to have no contact or visitation with Benjamin until his pending criminal case was completed because she may have to give depositions or testify in that case, which would be difficult for her. Rodriquez-Fletcher testified that when she and Gracie discuss Gracie seeing her father she becomes "dysregulated . . . hypervigilant, [and] hyperaroused." On one occasion, she was physically shaking and wet her pants. Rodriquez-Fletcher stated she had diagnosed Gracie with post-traumatic stress disorder. She recommended that when Gracie is ready for visits with Benjamin, the visits should be in a therapeutic setting with Rodriquez-Fletcher. Rodriquez-Fletcher also recommended that the

parents take "Circle of Security" classes and that Gracie continue in therapy. Rodriquez-Fletcher stated Gracie's progress in therapy would be measured based on established treatment goals.

In the court's order following the disposition hearing, it adopted the recommendations in the GAL's report, ordering as follows: that the parents take Circle of Serenity provided the classes are available at a reasonable and affordable cost; the parents were to develop a plan for sibling visits between Gracie and Benjamin and Kasie's twins, when therapeutically recommended; that Benjamin provide photographs of the twin siblings to Gracie's therapist to be shared when therapeutically appropriate; that Gracie continue therapy with Rodriquez-Fletcher; and that any contact between Gracie and Benjamin be pursuant to the recommendation of Gracie's therapist and compliant with various court orders. The court also ordered that Gracie was to remain in Brittany's custody.

## ASSIGNMENTS OF ERROR

Benjamin assigns that the juvenile court erred in (1) failing to award the Department custody of Gracie, (2) failing to order the Department to prepare a court report and case plan, (3) determining the terms of the plan presented at disposition were reasonable, and (4) determining the plan presented at disposition was in Gracie's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019).

## ANALYSIS

Benjamin first assigns that the juvenile court erred in failing to award the Department custody of Gracie, instead placing her in Brittany's custody. At the time of the adjudication hearing, Brittany already had temporary sole custody of Gracie. In the adjudication order, the court ordered that Gracie was to remain in Brittany's custody. Subsequently, in the disposition order, the court ordered that Gracie would remain in Brittany's custody.

As previously stated, Benjamin did not appeal the adjudication. The present appeal is from the July 2, 2020, disposition order. The adjudication order was a final appealable order and Benjamin could have raised the custody issue at that time, but did not. See *In re Interest of Keisha G.*, 21 Neb. App. 472, 840 N.W.2d 562 (2013) (adjudication and disposition orders are final appealable orders). The court's disposition order merely continued or extended the custody of Gracie with Brittany ordered at the time of adjudication. Where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Accordingly, Benjamin cannot now raise the issue of Gracie's custody with Brittany, rather than the Department, as it is a collateral attack on the previous adjudication order and is not permitted.

Benjamin next assigns that the juvenile court erred in failing to order the Department to prepare a court report and case plan. Relying on Neb. Rev. Stat. § 43-285(2) (Reissue 2016), he

asserts that following an adjudication pursuant to § 43-247(3)(a), a juvenile court typically orders the Department to prepare and file a proposed plan with the court. Subsection (2)(a) specifically provides in part:

> Following an adjudication hearing at which a juvenile is adjudged to be under subdivision (3)(a) or (c) of section 43-247, the court may order the department to prepare and file with the court a proposed plan for the care, placement, services, and permanency which are to be provided to such juvenile and his or her family.

When this subsection applies, it provides that a proposed plan by the Department is at the discretion of the court. The court may order the Department to prepare a proposed plan but is not required to do so. Further, in the present case, the Department is not involved. The record shows that the Department was dismissed from the case on January 16, 2020. Benjamin's second assignment of error fails.

Benjamin next assigns that the juvenile court erred in determining the plan presented at disposition was reasonable and was in Gracie's best interests. The plan Benjamin refers to is the GAL's report which set forth recommendations that were adopted by the court. He argues the plan is not reasonably related to the objective of reuniting him with his child or reasonably related to correcting the conditions that led to the adjudication. Benjamin contends that the plan offers no meaningful services and fails to contain any concrete steps for him and Gracie to rehabilitate their relationship and to reunify.

Benjamin relies on the proposition that once a plan of reunification has been ordered to correct the conditions underlying an adjudication under § 43-247(3)(a), the plan must be reasonably related to the objective of reuniting the parents with the children. See *In re Interest of Ethan M.*, 19 Neb. App. 259, 809 N.W.2d 804 (2011). In analyzing the reasonableness of a rehabilitation plan ordered by a juvenile court, an appellate court should address whether the plan tends to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013). Similar to other areas of law, reasonableness of a rehabilitative plan for a parent depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis. *Id.*

Benjamin also contends that the State has the burden of proving that a case plan is in the child's best interests and the State failed to prove at disposition that the plan presented was in Gracie's best interests. See *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. *Id.*

Rodriquez-Fletcher testified that it was in Gracie's best interests that she not have any contact or visitation with Benjamin until his related criminal case was completed. She noted that Gracie may have to testify or give a deposition in that case which would be difficult for her. Rodriquez-Fletcher testified about Gracie's behavioral changes when discussing seeing Benjamin and that she had post-traumatic stress disorder. The GAL recommended that any contact between Gracie and Benjamin should only occur when recommended by Rodriquez-Fletcher.

Gracie was removed from Benjamin's custody based on allegations of physical abuse. It is reasonable and in her best interests that she not have to spend time with him until her therapist deems she is ready and that such contact take place in a therapeutic setting. The remaining requirements in the dispositional order were also reasonable and in Gracie's best interests. Benjamin's third and fourth assignments of error fail.

## CONCLUSION

Following our de novo review, the disposition order of the juvenile court is affirmed.

AFFIRMED.